**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| VICKI L. JOY,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | NO.  C10-799-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Vicki L. Joy appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

                I.      FACTS AND PROCEDURAL HISTORY

Plaintiff is a 61 year old woman with a high school education.  Administrative Record ("AR") at 116, 141.  Her past work experience includes employment as a laborer and janitor.  AR at 137.  Plaintiff was last gainfully employed in July 2005.  AR at 136.

REPORT AND RECOMMENDATION - 1

Plaintiff asserts that she is disabled due to bipolar disorder, herniated disc, rheumatoid arthritis, and memory problems. AR at 116-26, 136. She asserts an onset date of July 8, 2005. AR at 122.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 69-72, 74-75. Plaintiff requested a hearing, which took place on March 18, 2009. AR at 24-64. On September 1, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-23.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 12, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*

REPORT AND RECOMMENDATION - 2

*v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2)  there are no outstanding issues that must be resolved before a determination of disability can be made; and (3)  it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Joy bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On September 1, 2009, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 8, 2005, the alleged onset date.

3. The claimant has the following severe impairments: bipolar disorder, anxiety, alcohol dependence in remission, lumbar degenerative disc disease, ankle pain, and left knee degenerative joint disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is further precluded from climbing ladders, ropes or scaffolds. She is limited to simple, routine work and should have no contact or interaction with crowds or the public.

6. The claimant is capable of performing past relevant work as a industrial cleaner/janitor (DOT 381.687-018, unskilled, SVP 2). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

8. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2005 through the date of this decision.

AR at 15-23.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician Winslow Engel, M.D.?

2. Did the ALJ provide specific and legitimate reasons for rejecting the opinion of examining psychologist Kevin Morris, Psy.D.?

REPORT AND RECOMMENDATION - 5

3. Did the ALJ provide germane reasons for discrediting the lay testimony of plaintiff's ex-husband David Joy?

4. Did the ALJ properly evaluate the plaintiff's RFC?

5. Are the ALJ's step four and step five determinations supported by substantial evidence?

Dkt. No. 1.

## VII.   DISCUSSION

### A.   Opinion Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(1)-(2). "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041. However, under certain circumstances, a treating or examining physician's opinion can be rejected, whether or not that opinion is contradicted by other medical evidence of record. *Magallanes*, 881 F.2d at 751. The Commissioner must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The Commissioner must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id.*

        1.      <u>The ALJ provided specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician Winslow Engel, M.D.</u>

Winslow Engel, M.D., is plaintiff's primary care physician. AR 237-55, 297-306, 427-53, 474-79. His records indicate that he has been treating plaintiff for chronic ankle pain, back pain, and bipolar disorder, since at least 2005. AR 16, 255, 474. On July 13, 2005, five days after her alleged onset date, plaintiff was seen by Dr. Engel who reported,

> she comes in, ostensibly, to get a work excuse. She left her job last Friday morning and has not returned. After about 20 years of working in her janitorial position at the Seattle Center, she has had increasing and frequent difficulty doing her job. Problems began initially when she felt in conflict with one particular supervisor and continued after she was reassigned to a night shift. This change in assignment has been associated with persistent adverse effects on her manic depressive disorder. She has had difficulty concentrating, depression, forgetfulness, fatigue and paranoid delusions. Over the past few months, she has left work or failed to report to work on numerous occasions. She comes in saying she needs to be on disability. However, the only thing that really has changed is her assignment to the night shift. She has other problems including chronic ankle pain and back pain. However, the main determinant of her current inability to work seems to be the shift.
> . . .
> I wrote another work excuse starting last Friday morning and continuing indefinitely. I also indicated, in writing, that she is medically incapable of continuing to work on a night shift and needs to be reassigned back to days.

AR 255, 18-19. As the ALJ noted, however, on September 9, 2005, Dr. Engel reported, "At this point, in fact, she is quite stable and is capable of doing her job during morning, afternoon or evening hours. Her pain is under reasonably good control on medication with a pain level of about 5-7/10. No reported side effects. She has not had any agitation, insomnia, or other unstable mood swings." AR 252, 19. On September 19, 2005, the plaintiff told Dr. Engel that she was "ready to return to work, regardless of the shift." AR 251, 19. On November 15, 2005, Dr. Engel reported that plaintiff was working for a cleaning service and "has been stable or improving." AR 249, 19. On January 18, 2006, plaintiff reported to be "moderately active and doing volunteer work, but also looking for a regular job." AR 19, 247. Dr. Engel noted that plaintiff "is well satisfied with her current medication regime. Her pain is at a tolerable, 2-3/10

REPORT AND RECOMMENDATION - 7

level." *Id*. The ALJ noted that on February 17, 2006, "[s]even months after the claimant's alleged onset date, the claimant's pain was well controlled and she is described as having an 'improved quality of life and functioning.'" AR 19, 246.

The ALJ also noted that the plaintiff's son was killed in a car accident in March 2006, which exacerbated her anxiety and symptoms of depression and caused her to relapse on alcohol. AR 20, 244-45. "However, by April 2006 the claimant had stopped drinking and was doing better emotionally." AR 20. On August 11, 2006, plaintiff reported that she was in school to become a dental hygienist and that her back pain had improved. AR 20, 239. The ALJ further noted that Dr. Engel's "[o]ngoing treatment records reveal excellent pain control, and minimal anxiety on the claimant's behalf well into 2008." AR 20, 238-55, 297-306, 427-53.

On March 4, 2009, Dr. Engel prepared an "Opinion RE: Effect of Pain on Individual's Ability To Do Work-Related Activities," which indicated that plaintiff was limited to less than sedentary work. AR 474-79. The ALJ rejected Dr. Engel's 2009 opinion, finding it "inconsistent with Dr. Engel's own contemporaneous treatment notes and diagnoses indicating [plaintiff] was able to return to work without restriction as of September 9, 2005." AR 20. The ALJ also found no objective worsening of the plaintiff's impairments between September 2005 and March 2009 "to account for the change in his opinion." *Id*. In addition, the ALJ found Dr. Engel's opinion inconsistent with the opinions of examining physician Dan V. Phan, M.D., and state agency physician Robert Hoskins, M.D., who opined that plaintiff had no functional limitations other than that she should use proper back support and lifting techniques to avoid aggravating her back. AR 256-60, 281, 308.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Engel's 2009 opinion. (Dkt. 12 at 14-16.) The Court finds no error. As the Commissioner points out, Dr. Engel's 2009 opinion restricting plaintiff to less than sedentary work since 2005 is inconsistent with his treatment notes which state that plaintiff was capable of returning to work as a janitor – a medium level job –without restriction as of September 9, 2005. AR 252, 19, 49.

REPORT AND RECOMMENDATION - 8

The ALJ adopted Dr. Engel's opinions of July 2005 and September 2005 returning the plaintiff to work, as consistent with his contemporaneous treatment notes, but found no objective evidence showing any worsening of the plaintiff's impairments between September 2005 and March 2009.  AR 20.

Plaintiff disputes the ALJ's finding, arguing that degenerative joint disease "become[s] progressively worse by nature."  Dkt. 12 at 15.  While degenerative joint disease may become progressively worse with time, there is no set schedule for its progression.  Despite the fact that Dr. Engel suggested plaintiff was totally disabled, his medical records repeatedly state that plaintiff's low back and left ankle pain were "stable" through 2008, with only transitory worsening of symptoms.  AR 19-20, 238-55, 297-306, 427-53.  In addition, Dr. Engel's medical records repeatedly note that plaintiff reported she was satisfied with her medications which provided excellent pain control, improved her ability to function in daily life, and improved her quality of life.  *Id*.

Thus, the ALJ properly disregarded Dr. Engel's 2009 opinion which contradicted his earlier reports and where there was no medical evidence suggesting that plaintiff's impairments had grown progressively worse between September 2005 and March 2009.  An ALJ may reject a treating physician's opinion that is conclusory and inconsistent with the record.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)(finding ALJ properly rejected treating physicians opinion where medical evidence was inconclusive or contrary); *see also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Plaintiff also argues that the ALJ improperly credited Dr. Phan's opinion over Dr. Engel's opinion.  Dkt. 12 at 15-16.  On November 14, 2006, Dr. Phan conducted a physical examination of the plaintiff.  AR 256-59.  Based on his review of Dr. Engel's medical records, his physical examination of the plaintiff, and his x-ray findings, Dr. Phan found:

REPORT AND RECOMMENDATION - 9

> She has chronic back and leg pain and pain medication abuse. She was told to have some abnormality in her T11. There is no objective finding today. Thoracic x-ray today shows probable old compression fracture and mild degenerative changes at T11.
> . . .
> She injured her left knee, needed left kneecap surgeries age 26 and 52. Other than a slight decrease left knee ROM, there is no deformity or limitation detected.
> . . .
> In general her gait and station are normal. Her ability to use arms and hands for gross and fine manipulation is intact. With history of back problem, she should use proper back support and lifting techniques to avoid further aggravating of the condition.

AR 258. Dr. Phan found no other limitations.

"Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews*, 53 F.3d at 1041. Because Dr. Engel's opinion was contradicted by Dr. Phan who based his view on independent medical reports in the record, the ALJ was not required to defer to Dr. Engel's opinion. *See id.* The Court concludes the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Engel's 2009 opinion.

    2. <u>The ALJ did not provide specific and legitimate reasons for rejecting the opinion of examining psychologist Kevin Morris, Psy.D</u>.

Plaintiff argues that the ALJ did not provide legally sufficient reasons for rejecting the opinion of examining psychologist Kevin Morris, Psy.D. Dkt. 12 at 16-18. On July 12, 2007, Dr. Morris completed a Washington State Department of Social and Health Services ("DSHS") Psychological/Psychiatric Evaluation form. AR 313-24. Dr. Morris diagnosed major depressive disorder, recurrent, moderate; bereavement; and alcohol abuse. He found plaintiff moderately limited in five cognitive areas and four social areas, including: her ability to understand, remember and follow simple and complex instructions; learn new tasks; exercise judgment and make decisions; perform routine tasks; relate appropriately to co-workers, supervisors, and the

general public; respond to normal changes in the workplace; and control physical movements and maintain appropriate behavior. AR 315.

Dr. Morris's opinion is contradicted by state agency psychologist Leslie Postovoit, Ph.D., who completed a Mental Residual Functional Capacity Assessment ("MRFC") on November 27, 2006, which was affirmed by Michael Regets, Ph.D., on May 23, 2007. AR 263-66, 310. Dr. Postovoit opined that plaintiff is able to understand and remember simple repetitive tasks, is limited in work involving public contact, and is able to adapt to occasional changes in the workplace. AR 265. Given this conflict, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Morris's opinion. *See Reddick*, 157 F.3d at 725.

First, the ALJ noted that "Dr. Morris's opinion is generally consistent with the medical evidence of record." AR 21. However, the ALJ found that Dr. Morris's "assessment of moderate limitations are not defined and do not correlate to functional limitations." AR 21. This is not a sufficient reason for giving less weight to the DSHS psychological evaluation. The DSHS form specifically instructs the evaluator to "[d]etermine severity of each symptom, based on the degree of the symptoms interference with the individual's ability to perform the basic work-related activities of communicating and understating and following directions." AR 313. Furthermore, as plaintiff points out, the DSHS form defines "moderate" as "significant interference with basic work-related activities." *Id*. While the definitions and purpose of the DSHS form used by Dr. Morris and the MRFC form used by Dr. Postovoit differ, the difference does not justify rejecting Dr. Morris's DSHS medical report. Rather, the regulations require that every medical opinion be evaluated regardless of its source. 20 C.F.R.§§ 404.1527(d), 416.927(d). Moreover, the purpose for which medical reports are rendered does not provide a legitimate basis for rejecting them. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Thus, the first reason offered by the ALJ is not a legally sufficient reason for rejecting Dr. Morris's opinion.

REPORT AND RECOMMENDATION - 11

The Commissioner argues that the ALJ did not actually reject Dr. Morris's opinion but accommodated those limitations in her RFC by restricting plaintiff to simple, routine work with no contact or interaction with the public. Dkt. 17 at 11-12. The Court disagrees. Contrary to the Commissioner's argument, Dr. Morris's evaluation provided several moderate limitations – including moderate limitations in her ability to understand, remember, and follow simple instructions; relate appropriately to co-workers and supervisors; and respond to normal changes in the workplace – which were not adopted by the ALJ. These narrow but crucial limitations may be dispositive of the disability determination. AR 54-55. Thus, the Court cannot conclude that the ALJ did not reject Dr. Morris's limitations.

Second, the ALJ stated, "[Dr. Morris's] opinion has been considered but when considered with the overall evidence of record, the opinions of the State agency psychologist, and the lack of credibility to be given to the claimant's self-reports, his opinion does not support more significant limitations than assessed in the residual functional capacity assessment." AR 21. The ALJ did not identify what evidence of record contradicts Dr. Morris's opinion, nor did she identify substantial evidence in the record to support such a conclusion. The conclusions of the state agency psychologists are not themselves substantial evidence upon which to reject the opinion of the examining psychologist. The ALJ appears to reject Dr. Morris's opinion because it was based on plaintiff's self-reports which the ALJ found not entirely credible. However, Dr. Morris's opinion was based on the results of several objective tests and his own observations in addition to plaintiff's self-reports. Thus, the ALJ's implication that Dr. Morris's opinion deserved less weight because it was based on plaintiff's self-reports is not supported by the record and is therefore not a legitimate reason for rejecting his opinion. The Court agrees with petitioner that the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Morris's opinions. On remand, the ALJ should reevaluate the opinions of Dr. Morris.

        B.       <u>The ALJ failed to provide germane reasons for rejecting the lay witness testimony of plaintiff's ex-husband David Joy</u>.

In order to determine whether a claimant has an impairment, an ALJ may also consider lay witness sources, such as testimony from family members. 20 C.F.R. § 404.1513(d)(4), 416.913(d)(4). Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). It therefore cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, she must provide reasons germane to each witness. *Id*. Identifying inconsistencies between such statements and the record when looked at as a whole is sufficient. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

Plaintiff argues that the ALJ failed to provide specific and valid reasons for rejecting the testimony and third party function report submitted by her ex-husband David Joy. Dkt. 12 at 18-19. In the report, Mr. Joy indicated that plaintiff is able to take care of her pets, prepare her own meals, do laundry, wash dishes, grocery shop, attend doctor appointments, and watch television. AR 143-51. He stated that plaintiff has problems getting along with others because she likes to argue too much, but talked to her mother regularly. AR 147. He also indicated that plaintiff has problems with memory, completing tasks, concentration, and getting along with others. AR 148. The ALJ found Mr. Joy's "statements are generally consistent with the medical evidence and the residual functional capacity assessment," but that "his opinion regarding her concentration, memory, and completing tasks are not entirely consistent with the record and cannot be given full weight." AR 22.

"One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511 (citing *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984)). Here, however, the ALJ did not identify any inconsistencies between Mr. Joy's statements and the record. The ALJ's statement thus provides no effective basis for judicial review. Moreover, as the plaintiff points out, Mr. Joy's testimony is consistent with test results

REPORT AND RECOMMENDATION - 13

administered by Dr. Morris, and with some of the moderate limitations found by Dr. Postovoit. AR 313-24, 263-65. On remand, the ALJ should reevaluate the lay witness testimony of Mr. Joy in light of the applicable record and specifically identify any conflicting evidence.

C. Until the ALJ has properly evaluated the medical opinion evidence, the Court cannot evaluate the adequacy of the ALJ's RFC assessment.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at 1. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96.8p.

Here, the RFC at issue states that plaintiff is able to perform medium work with no climbing of ladders, ropes or scaffolds. AR 17. In addition, plaintiff "is limited to simple, routine work and should have no contact or interaction with crowds or the public." *Id*.

Because this case is being remanded for the reasons detailed above, the Court eschews a detailed analysis of plaintiff's RFC argument that the ALJ failed to comply with the mandatory requirements of SSR 96-8p when determining plaintiff's RFC. Dkt. 12 at 19-23. On remand, the ALJ should reevaluate the psychological opinion evidence and reassess plaintiff's RFC.

D. Until the ALJ has properly evaluated the medical opinion evidence, the Court cannot evaluate the adequacy of the hypothetical posed to the vocational expert.

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. *Embrey*, 849 F.2d at 422-24. In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical posed must "consider all of the

REPORT AND RECOMMENDATION - 14

claimant's limitations." *Andrews*, 53 F.3d at 1044.  The ALJ is not required to include limitations for which there is no evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Because the hypothetical question posed to the vocational expert was based upon the faulty determination of plaintiff's RFC, the vocational expert's answer cannot serve as substantial evidence that plaintiff can perform other jobs that exist in substantial numbers in the national economy.  As a result, the questions posed to the vocational expert and his responses are legally deficient and of no evidentiary value.  *Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir. 2006).  On remand, the ALJ should properly evaluate the evidence in accordance with appropriate legal standards and incorporate them into a hypothetical to the vocational expert.

      E.     <u>This matter should be remanded for further proceedings</u>.

The decision whether to remand for further proceedings or to order an immediate award of benefits is within the Court's discretion.  *See Harmen*, 211 F.3d at 1175-78.  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id*. at 1179 (noting "that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id*.  Here, remand for further proceedings is appropriate to allow the ALJ to remedy the above mentioned errors.  *Id*. at 1178.

///

///

///

///

///

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 16th day of November, 2010.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16